IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| JUSTIN S. KRAMER, *Plaintiff,* v. VIRGINIA STATE COURT SYSTEM, ET AL., *Defendants.* | CASE NO. 6:13-cv-00007 <br><br> <u>MEMORANDUM OPINION</u> <br><br> JUDGE NORMAN K. MOON |

Plaintiff Justin S. Kramer ("Plaintiff") raises a variety of federal and state law claims in this pro se civil action. Plaintiff's complaint, which he filed in this court on January 18, 2013, names ten defendants and features nineteen causes of action, all stemming from state court proceedings regarding the custody and child support arrangements for Plaintiff's infant son.[1] Plaintiff attempts to bring his action pursuant to "42 U.S.C. §§ 1983, 1985, 1986 and the First, Fourth, Fifth, Eight, Ninth, Tenth, Thirteenth and Fourteenth Amendments of the United States Constitution to redress the deprivation of rights secured to the plaintiff[]." Plaintiff adds that "[j]urisdiction and pendent claims are further supported by Title IV-D of the Social Security Act generally, and 42 U.S.C. § 652(a)(8) specifically." For the reasons that follow, I will dismiss Plaintiff's complaint, sua sponte, for lack of subject matter jurisdiction.

---

[1] The named defendants in this case are as follows: "Virginia State Court System; Angela M. Kramer, individually and as 'custodial parent' for the State of Virginia; John Blades, individually; Tammie Blades, individually; Brian R. Moore, individually and as Attorney for Angela M. Kramer; Mosby Garland Perrow III, individually and as Circuit Court Judge-City of Lynchburg; Phillips, Morrison, Johnson & Ferrell Attorneys At Law, employer of Attorney Brian R. Moore; Henry C. Devening, individually and as former attorney for Plaintiff; City of Lynchburg; and the State of Virginia."

1

## I. Factual Background

According to Plaintiff's complaint, Plaintiff and Angela M. Kramer, a named defendant, had their first child in July of 2010. In 2011 the parties began a term of separation, but maintained some type of shared custody arrangement. A divorce was planned, but Plaintiff describes the process as "amicable" until Ms. Kramer moved with their child from Virginia to South Carolina to live with her parents and retained a lawyer. The state court litigation that ensued gives rise to Plaintiff's instant claims.

Custody proceedings appear to have begun in May 2011 in state court. Plaintiff states that the interim child support order the court entered on July 12, 2011, "caused great conflict between the parties." According to Plaintiff, who initially retained a lawyer but eventually proceeded pro se, "[t]here was clearly disparate treatment between Plaintiff and the lawyer Defendant Moore throughout the whole case." Plaintiff states that throughout litigation he suffered "oppressive and discriminatory treatment" by the court, such that he was "denied his Constitutionally-protected due process rights." According to Plaintiff, the series of motions he filed and requests he made between May 2011 and June 2012 were addressed by the court "in a discriminatory pattern against the father's parenting interests and in favor of defendants' money interests."[2]

Plaintiff's complaint features both substantive and procedural due process claims. In support, Plaintiff alleges that the "defendants have effectively seized the child, home and livelihood of the Plaintiff without fair showing of abandonment, neglect, abuse, unfitness, misconduct or legitimate cause and without just compensation." Plaintiff also states that he was "precluded all meaningful right to confront witnesses exploited against him through discovery

---

[2] Plaintiff believes that the defendants' financial interests are aligned, because in his view, "the State 'collects' less child support if parents share equal custody . . . [so by] prohibiting fathers from having equal custody and time with their children, the State's child support coffers are increased and federal dollars are received." Compl. ¶ 4.

and notice deprivations."  Plaintiff proceeds to assert a variety of causes of action for alleged constitutional violations under a broad range of categories, including "parental privacy", "distinct right of fatherhood", "burden of litigation", "tyranny", "sovereign abuse" and "involuntary servitude".  Plaintiff's complaint includes equal protection, cruel and unusual punishment, and inverse taking claims purportedly arising under the U.S. Constitution, as well as contract, defamation, emotional distress, and attorney malpractice claims arising under state law. Plaintiff seeks $2,000,000 in compensatory damages, an award of punitive damages in an amount determined by this Court, attorneys fees, and a bill of costs for bringing his action. Plaintiff also seeks declaratory and/or injunctive relief, and an "order declaring Virginia Domestic Relations Law unconstitutional on [its] face and as applied to this case."

## II.     Subject Matter Jurisdiction

Federal district courts have original jurisdiction over civil cases "arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  As mentioned, Plaintiff's complaint purports to raise a variety of federal claims arising under the U.S. Constitution, along with several state law claims pertaining to the same series of state court proceedings.  Where a court has original jurisdiction over a civil action, it has supplemental jurisdiction over "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).

However, "[f]ederal courts are courts of limited jurisdiction.  They possess only that power authorized by Constitution and statute."  *Kokkonen v. Guardian Life Ins. Co. of America,* 511 U.S. 375, 377 (1994).  Thus, the mere assertion of a federal claim does not confer subject matter jurisdiction under § 1331.  *Lovern v. Edwards,* 190 F.3d 648, 654 (4th Cir. 1999).

3

Likewise, "[i]t is not sufficient to obtain jurisdiction under 28 U.S.C. § 1343(a)(3), to merely assert a constitutional violation." *Davis v. Pak*, 856 F.2d 648, 650 (4th Cir. 1988) (citation omitted).

Federal jurisdiction requires that a party assert a substantial federal claim. *Davis*, 856 F.2d at 650 (*citing Hagans v. Lavine,* 415 U.S. 528, 536 (1974)). In other words, "federal courts are without power to entertain claims otherwise within their jurisdiction if they are so attenuated and unsubstantial as to be absolutely devoid of merit, wholly insubstantial, obviously frivolous, plainly unsubstantial, or no longer open to discussion." *Hagans*, 415 U.S. at 536-37 (internal quotation marks & citations omitted). When a district court lacks subject matter jurisdiction over an action, the action must be dismissed. *Arbaugh v. Y & H Corp.,* 546 U.S. 500, 506-07 (2006).

Rule 12 authorizes the district court to dismiss a "patently insubstantial complaint . . . for want of subject-matter jurisdiction." *Neitzke v. Williams*, 490 U.S. 319, 327 n.6 (1989); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). In fact, the court has an independent obligation to evaluate, sua sponte, its subject matter jurisdiction if in doubt. *See Sucampo Pharmaceuticals, Inc. v. Astellas Pharma, Inc.*, 471 F.3d 544, 548 (4th Cir. 2006).

Although many of the legal theories in Plaintiff's complaint are difficult to follow, courts traditionally view civil rights complaints, particularly those brought pro se, with "special judicial solicitude." *See e.g., Harrison v. U.S. Postal Service,* 840 F.2d 1149, 1152 (4th Cir. 1988). However, "[t]he special judicial solicitude with which a district court should view such pro se complaints does not transform the court into an advocate. Only those questions which are squarely presented to a court may properly be addressed." *Weller v. Dep't of Social Services*, 901 F.2d 387, 391 (4th Cir. 1990).

Even liberally construed, Plaintiff's complaint wholly insubstantial, and does not state a viable federal cause of action. Because Plaintiff's federal claims are "so attenuated and unsubstantial as to be absolutely devoid of merit", *Hagans*, 415 U.S. at 536, this Court does not have subject matter jurisdiction to hear his complaint. Accordingly, Plaintiff's complaint must be summarily dismissed, pursuant to Fed. R. Civ. P. 12(h)(3).

### III. Discussion

The *Hagans* court made it clear that the insubstantially threshold is a difficult one to meet, so I will address Plaintiff's specific claims here. For starters, it is apparent that Plaintiff's due process allegations are not substantial federal claims. In terms of his procedural due process claim, Plaintiff has a protectable liberty interest in the care and custody of his children. *See, e.g., Weller*, 901 F.2d at 391. But the essence of due process is satisfied when a party is given notice of the case against him, and an opportunity to be heard. *See Davis*, 856 F.2d at 651 (*citing Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542 (1985)). In his complaint, Plaintiff details the state court proceedings that took place before a final custody and child support order was issued in his case.[3] And while Plaintiff also alleges a variety of state law violations in connection with those proceedings, it is well settled that state law cannot provide the basis for a due process claim. *Clark v. Link*, 855 F.2d 156, 163 (4th Cir. 1988).

As for Plaintiff's other due process claim, the substantive component of the Due Process Clause "bar[s] certain government actions regardless of the fairness of the procedures used to implement them." *Daniels v. Williams,* 474 U.S. 327, 331 (1986). While there are no precise

---

[3] Plaintiff disagrees with the outcome of those proceedings, contending that the state court's order is in accordance with a "State-supported, 'Mother-Take-All System'", and wonders how the decision of court, with the evidence that was presented, "could be anything other than passion and prejudice against Plaintiff." Compl. ¶ 106. Pursuant to that order, it appears that Plaintiff has 90 hours of visitation per month with his son, who now resides in South Carolina with his mother, and is required to pay $583.00 per month in child support. Compl. ¶ 72, 111.

5

standards for determining which actions are proscribed, it is well established that "[s]ubstantive due process does not categorically bar the government from altering parental custody rights." *Weller*, 901 F.2d at 392. In this case, a routine custody and child support order issued by a state court judge, following judicial proceedings, does not even approach a potential substantive due process violation.[4]

Furthermore, Plaintiff's claims against state defendants, which in Plaintiff's complaint include the state of Virginia, the Virginia court system, and one of its judges are barred by the Eleventh Amendment, which prohibits suits by private parties against states in federal courts, unless a state has waived its immunity. Plaintiff's claims that appear to be against state defendants only are as follows: an allegation that "state invasions into the privacy of the[] parties resulted in a complete and irrevocable destruction of the former productive childrearing environment"; a claim against the state of Virginia for "sovereign abuse", by subjecting its courts to federal laws; an allegation of involuntary servitude, in violation of the Thirteenth Amendment, stemming from the child support order rendered by the state court; a claim stemming from "overregulation" in the domestic relations sphere; and a cruel and unusual punishment claim, stemming from the defendants' alleged sponsorship of "domestic incident reporting and debtor prisons". Plaintiff also raises a sex-based discrimination claim, based on the state court's application of Virginia laws that have "imposed an inordinate burden upon the male parenting population in the allocation of rights and responsibilities in domestic relations litigation."

---

[4] Later in his complaint, Plaintiff cites *Troxel v. Granville*, 530 U.S. 57 (2000), for the premise that the burden of litigating a domestic relations proceeding can itself be "so disruptive of the parent-child relationship that the constitutional right of a custodial parent to make certain basic determinations for the child's welfare becomes implicated." *Id.* at 75. (citation omitted). In that case, the Court struck down a state statute that allowed any person to petition the state court for visitation at any time, holding that the Due Process Clause protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children. *Id.* at 66. By contrast, the genesis of Plaintiff's complaint in this case is a custody dispute involving the mother of his child.

6

However, Plaintiff's complaint fails to allege anything that even remotely suggests a factual basis for that claim.[5]

Plaintiff's claims for which he appears to implicate all defendants collectively are similarly barred by the Eleventh Amendment, given that the state of Virginia and the Virginia court system are named defendants in this matter. These include the alleged violation of a privacy right (the "natural right and duty to raise children") by "[t]he named defendants", and a claim for the "inverse taking of child and parent-child relationship without due process or just compensation" due to "the collective actions of defendants".

In any case, none of Plaintiff's federal claims contain any specific allegation that could give rise to a colorable claim against a non-state defendant, or Judge Perrow acting in his individual capacity.[6] To illustrate, Plaintiff also alleges a violation of his "Distinct Right of Fatherhood" by Judge Perrow, Attorney Moore, and Attorney Devening, who "conspired to enter standardized orders against [him] instead of orders more clearly written and suggested by Plaintiff[.]" Plaintiff's allegation that defendants "have individually or collectively impaired the father's rights under the last clause of the First Amendment" is similarly devoid of merit.[7]

Given that Plaintiff's federal claims are insubstantial, this Court is also without jurisdiction to decide any state issues or claims in his complaint. *See Davis*, 856 F.2d at 651. In regards to Plaintiff's request for injunctive relief, the *Ex parte Young* exception to Eleventh

---

[5] Specifically, that that he was treated differently from others who were similarly situated, and that the unequal treatment was the result of discriminatory animus. *See Morrison v. Garraghty,* 239 F.3d 648, 654 (4th Cir. 2001).

[6] With regard to Judge Perrow, judges enjoy absolute judicial immunity from damages liability for judicial acts unless done "in clear absence of all jurisdiction." *Stump v. Sparkman,* 435 U.S. 349, 356-57 (1978). In making such determination, "the scope of the judge's jurisdiction must be construed broadly." *Id.* at 356. A judge may "not be deprived of immunity because the action [taken] was in error, was done maliciously, or was in excess of his authority." *Id.*

[7] In this count, Plaintiff states that "defendants and related parties . . . knowingly fabricated statements to stigmatize the father as a sub-standard parent . . . [which] produced a suppression of the father's access to the court and denial and/or frustration of his parental rights and access to his son." Compl. ¶ 100.

7

Amendment sovereign immunity "permits a federal court to issue prospective, injunctive relief against a state officer to prevent ongoing violations of federal law, on the rationale that such a suit is not a suit against the state for purposes of the Eleventh Amendment." *McBurney v. Cuccinelli*, 616 F.3d 393, 399 (4th Cir. 2010) (*citing Ex parte Young*, 209 U.S. 123, 159-60 (1908). However, a court must find a special relation between the state officer being sued and the challenged statute before invoking the *Ex parte Young* exception to Eleventh Amendment sovereign immunity. *See, e.g., McBurney*, 616 F.3d at 401 ("[G]eneral authority to enforce the laws of the state is an insufficient ground for abrogating Eleventh Amendment immunity.") (citations omitted). Here, Plaintiff does not cite a specific statute in his request for injunctive relief. Instead, he vaguely "seeks an order declaring Virginia Domestic Relations Law unconstitutional on [its] face and as applied to this case." Compl. ¶ 114. This Court is without jurisdiction to hear frivolous constitutional claims, *see Hagans*, 415 U.S. at 536-37, and Plaintiff's complaint must be dismissed.

## IV. Conclusion

For the foregoing reasons, Plaintiff's complaint is dismissed without prejudice. The Clerk of the Court is hereby directed to send a certified copy of this memorandum opinion and the accompanying order to Plaintiff and all defendants whose names and addresses appear in the "service list" (*see* docket no. 2) submitted by Plaintiff.

Entered this 30th day of January, 2013.

*[signature: Norman K. Moon]*
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE